BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE CALIFORNIA AIR RESOURCES BOARD has requested an opinion on the following question:
When the California Air Resources Board adopts regulations to reduce volatile organic compound emissions from consumer products, to what does the statutory prohibition against the elimination of a "product form" refer?
 CONCLUSION
When the California Air Resources Board adopts regulations to reduce volatile organic compound emissions from consumer products, the statutory prohibition against the elimination of a "product form" refers to the shape and structure of the product, such as liquid, solid, powder, gel, crystal, aerosol, or pump spray, as distinguished from the material of which it is composed.
 ANALYSIS
The Legislature has directed the California Air Resources Board ("Board") to adopt regulations to reduce volatile organic compound emissions from consumer products. Health and Safety Code section41712[1] provides:
 "(a) For purposes of this section, the following terms have the following meaning:
 "(1) `Consumer product' means a chemically formulated product used by household and institutional consumers, including, but not limited to, detergents; cleaning compounds; polishes; floor finishes; cosmetics; personal care products; home, lawn, and garden products; disinfectants; sanitizers; aerosol paints; and automotive specialty products; but does not include other paint products, furniture coatings, or architectural coatings.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(b) The state board shall adopt regulations to achieve the maximum feasible reduction in volatile organic compounds emitted by consumer products, if the state board determines that adequate data exists to establish both of the following:
 "(1) The regulations are necessary to attain state and federal ambient air quality standards.
 "(2) The regulations are commercially and technologically feasible and necessary.
 "(c) A regulation shall not be adopted which requires the elimination of a product form.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Accordingly, the Legislature has placed certain conditions on the Board's rule-making authority in section 41712. It has prohibited the adoption of a regulation that "requires the elimination of a product form." (§ 41712, subd. (c).) The question presented for resolution concerns the definition and scope of the term "product form." We conclude that for purposes of section41712, subdivision (c), a product form is the shape and structure of a consumer product as distinguished from the material of which it is composed.
In examining the language of section 41712, we may rely upon and apply well settled principles of statutory construction. "When construing a statute we must `ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 977.) "`Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning. [Citations.]' [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citation.]" (Dyna-Med, Inc. v. Fair Employment and Housing Com. (1987) 43 Cal.3d 1379, 1387.) Finally, the administrative construction of a statute by those charged with its enforcement is entitled to great weight, and the courts will not depart from such construction unless it is clearly erroneous or unauthorized. (Dix v. Superior Court (1991)53 Cal.3d 442, 460; Nipper v. California Auto. Assigned Risk Plan (1977)19 Cal.3d 35, 45; 83 Ops.Cal.Atty.Gen. 40, 44 (2000).)
Initially, we note that the term in question applies solely to consumer products, which are defined as "chemically formulated product[s] used by household and institutional consumers. . . ." (§41712, subd. (a)(1).) Hence, the focus of our inquiry is on the word "form." As relevant to this inquiry, the common definition of the term "form" is "the shape and structure of something as distinguished from the material of which it is composed." (Webster's 3d New Internat. Dict. (1971) p. 892.)
Application of this common definition here is supported by the Board's regulations concerning consumer products (Cal. Code Regs., tit. 17, §§ 17:94500-17:94575). For purposes of reporting information regarding a consumer product, the Board has defined "product form" as "the applicable form which most accurately describes the product's dispensing form as follows: . . . Aerosol Product . . . Solid . . . Pump . . . Spray . . . Liquid . . . Gel . . . Other. . . ." (Cal. Code Regs., tit. 17, § 17:94508, subd. (a)(101); see also Cal. Code Regs., tit. 17, §17:94504, subd. (b)(2)(c) ["the product forms (aerosol, pump, liquid, solid, etc.)"]; Cal. Code Regs., tit. 17, § 17:94508, subd. (a)(8) ["`all other forms' include, but are not limited to, solids, liquids, wicks, powders, crystals, and cloth or paper wipes (towelettes)"].)
An example of this common usage of the term "form" is contained in Carter-Wallace, Inc. v. Procter Gamble Company (9th Cir. 1970)434 F.2d 794, 797, where the court refers to the "product form" of a particular deodorant as a cream, a roll-on, and an aerosol spray. These different shapes and structures of the product represent three different forms of the product as distinguished from its chemical composition.
We have examined in detail the legislative history of section41712. The prohibition against eliminating a product form was added in 1996. (Stats. 1996, ch. 766, § 1.) Consistent with the above interpretation of the term are the examples given of a product form specified in the materials: "spray paint, aerosol deodorant and hair spray." (Cal. Dept. of Finance, Enrolled Bill Rep. on Assem. Bill No. 1849 (1995-1996 Reg. Sess.) Sept. 5, 1996; Cal. Dept. of Finance, analysis of Assem. Bill No. 1849 (1995-1996 Reg. Sess.) July 23, 1996.)
We thus conclude that when the Board adopts regulations to reduce volatile organic compound emissions from consumer products, the prohibition against the elimination of a product form refers to the shape and structure of the product, such as liquid, solid, powder, gel, crystal, aerosol, or pump spray, as distinguished from the material of which it is composed.
[1] All references hereafter to the Health and Safety Code are by section number only.