BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE SHEILA JAMES KUEHL, MEMBER OF THE STATE SENATE, has requested an opinion on the following questions:
1. If a perpetrator commits a sexual assault wholly or partly because of the victim's gender, and the perpetrator has no animosity toward the individual victim or toward persons with that gender, has a hate crime been committed?
2. If a perpetrator commits a crime wholly or partly because the perpetrator perceives that the victim's disability, gender, or other protected characteristic makes the victim more vulnerable to the commission of the crime, and the perpetrator has no animosity toward the victim or toward persons with that protected characteristic, has a hate crime been committed?
3. If a perpetrator commits a crime wholly or partly because the victim is under the care of the perpetrator for a disability, and the perpetrator has no animosity toward the victim or toward persons with that disability, has a hate crime been committed?
4. What definition of "hate crime" is to be applied by a local law enforcement agency in reporting hate crimes to the Department of Justice?
 CONCLUSIONS
1. If a perpetrator commits a sexual assault wholly or partly because of the victim's gender, a hate crime has not been committed unless the perpetrator also acts upon some animosity or other bias motivation toward the victim's gender.
2. If a perpetrator commits a crime wholly or partly because the perpetrator perceives that the victim's disability, gender, or other protected characteristic makes the victim more vulnerable to the commission of the crime, a hate crime has not been committed unless the perpetrator also acts upon some animosity or other bias motivation toward the victim's disability, gender, or other protected characteristic.
3. If a perpetrator commits a crime wholly or partly because the victim is under the care of the perpetrator for a disability, a hate crime has not been committed unless the perpetrator also acts upon some animosity or other bias motivation toward the victim's disability.
4. The definition of "hate crime" to be applied by a local law enforcement agency in reporting hate crimes to the Department of Justice is the same as the definition contained in Penal Code section 422.55, as further clarified by Penal Code section 422.56, subdivision (d), namely, a criminal offense committed in part due to the perpetrator's bias motivation against the victim's actual or perceived disability, gender, nationality, race or ethnicity, religion, sexual orientation, or association with a person or group with one or more of such actual or perceived characteristics.
 ANALYSIS
In California, a hate crime is a criminal offense committed "because of" the victim's actual or perceived disability, gender, nationality, race or ethnicity, religion, sexual orientation, or association with a person or group with one or more of these actual or perceived characteristics. (Pen. Code, § 422.55.)[1] The questions presented for resolution are united by a common theme, that is, what does it mean to commit a crime "because of" a person's protected characteristic? Is it enough that the perpetrator purposefully selects a victim who has or is perceived to have the protected characteristic? Or must the perpetrator also be motivated by some subjective attitude toward people who have the protected characteristic? And, if some subjective attitude is required, what kind of attitude qualifies? We conclude that the intentional selection of a victim with a protected characteristic is not alone sufficient, and that a subjective attitude amounting to "bias motivation" is an essential element of a hate crime offense.
Before addressing each of the four questions individually, we note that California has an array of statutes addressing hate crimes.[2] In 1987, the Legislature enacted the centerpiece legislation, known as the Tom Bane Civil Rights Act (Stats. 1987, ch. 1277; "Act"). (See Venegas v. County of Los Angeles (2004) 32 Cal.4th 820, 845-848 (conc. opn. of Baxter, J.); In re M.S. (1995) 10 Cal.4th 698, 706-707, fn. 1; In re Michael M. (2001) 86 Cal.App.4th 718, 725-726; In re Joshua H. (1993)13 Cal.App.4th 1734, 1748, fn. 9.) The Act makes it a crime to willfully interfere with another person's civil rights because of that person's race, religion, or other protected characteristic. Section 422.6 currently provides:
 "(a) No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate, interfere with, oppress, or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of this state or by the Constitution or laws of the United States in whole or in part because of one or more of the actual or perceived characteristics of the victim listed in subdivision (a) of Section 422.55.
 "(b) No person, whether or not acting under color of law, shall knowingly deface, damage, or destroy the real or personal property of any other person for the purpose of intimidating or interfering with the free exercise or enjoyment of any right or privilege secured to the other person by the Constitution or laws of this state or by the Constitution or laws of the United States, in whole or in part because of one or more of the actual or perceived characteristics of the victim listed in subdivision (a) of Section 422.55.
 "(c) Any person convicted of violating subdivision (a) or (b) shall be punished by imprisonment in a county jail not to exceed one year, or by a fine not to exceed five thousand dollars ($5,000), or by both the above imprisonment and fine, and the court shall order the defendant to perform a minimum of community service, not to exceed 400 hours, to be performed over a period not to exceed 350 days, during a time other than his or her hours of employment or school attendance. However, no person may be convicted of violating subdivision (a) based upon speech alone, except upon a showing that the speech itself threatened violence against a specific person or group of persons and that the defendant had the apparent ability to carry out the threat.
 "(d) Conduct that violates this and any other provision of law, including, but not limited to, an offense described in Article 4.5 (commencing with Section 11410) of Chapter 3 of Title 1 of Part 4, may be charged under all applicable provisions. However, an act or omission punishable in different ways by this section and other provisions of law shall not be punished under more than one provision, and the penalty to be imposed shall be determined as set forth in Section 654."
The Act also enhances the penalties associated with other crimes, when the crimes are committed because of the victim's race, religion, or other protected characteristic. Section 422.7 currently provides:
 "Except in the case of a person punished under Section 422.6, any hate crime that is not made punishable by imprisonment in the state prison shall be punishable by imprisonment in the state prison or in a county jail not to exceed one year, by a fine not to exceed ten thousand dollars ($ 10,000), or by both that imprisonment and fine, if the crime is committed against the person or property of another for the purpose of intimidating or interfering with that other person's free exercise or enjoyment of any right secured to him or her by the Constitution or laws of this state or by the Constitution or laws of the United States under any of the following circumstances, which shall be charged in the accusatory pleading:
 "(a) The crime against the person of another either includes the present ability to commit a violent injury or causes actual physical injury.
 "(b) The crime against property causes damage in excess of four hundred dollars ($ 400).
 "(c) The person charged with a crime under this section has been convicted previously of a violation of subdivision (a) or (b) of Section 422.6, or has been convicted previously of a conspiracy to commit a crime described in subdivision (a) or (b) of Section 422.6."
Crimes purposely directed against members of a racial, religious, or other specified group are punished more severely than randomly inflicted crimes because a bias — inspired crime "is thought to inflict greater individual and societal harm." (Wisconsin v. Mitchell (1993) 508 U.S. 476, 487-488; see In re Joshua H., supra, 13 Cal.App.4th at p. 1748.) For example, studies indicate that hate crimes are more likely to be committed by strangers than non-bias crimes, and are more likely to be committed by multiple offenders; for these and other reasons, injuries inflicted during hate crimes tend to be more severe. (In re Joshua H., supra, 13 Cal.App.4th at p. 1478, fn. 9.) Further, "[r]eports show that victimization on the basis of an immutable characteristic or protected status has a more debilitating effect on the victim and on members in the victim's community than does conventional crime: victims fear a recurrence and experience an increased sense of vulnerability, isolation, and injustice." (Ibid.; see Wisconsin v. Mitchell, supra, 508 U.S. at p. 488 ["[A]ccording to [Wisconsin] and its amici, bias-motivated crimes are more likely to provoke retaliatory crimes, inflict distinct emotional harms on their victims, and incite community unrest"].)
Hate crime statutes have withstood challenges to their constitutionality on a number of occasions. (See, e.g., Wisconsin v. Mitchell, supra, 508 U.S. 476; In re M.S., supra, 10 Cal.4th 698; In re Joshua H., supra,13 Cal.App.4th 1734.) In answering various constitutional arguments, the California Supreme Court has concluded that "discriminatory motivation is an element that must be proved beyond a reasonable doubt" in prosecuting a hate crime. (In re M.S., supra, 10 Cal.4th at p. 718.) The court explained:
 "On one hand, the Legislature has not sought to punish offenses committed by a person who entertains in some degree racial, religious or other bias, but whose bias is not what motivated the offense; in that situation, it cannot be said the offense was committed because of the bias. On the other hand, nothing in the text of the statute suggests the Legislature intended to limit punishment to offenses committed exclusively or even mainly because of the prohibited bias. A number of causes may operate concurrently to produce a given result, none necessarily predominating over the others. By employing the phrase `because of' in sections 422.6 and 422.7, the Legislature has simply dictated the bias motivation must be a cause in fact of the offense, whether or not other causes also exist." (Id. at p. 719, italics added.)
In People v. Superior Court (Aishman) (1995) 10 Cal.4th 735,741, the court reaffirmed its requirement that bias motivation must be a cause of the offense: "Our reasoning on this point in In re M.S., supra, applies with equal force to section 422.75." Section 422.75 presently states:
 "(a) Except in the case of a person punished under Section 422.7, a person who commits a felony that is a hate crime or attempts to commit a felony that is a hate crime, shall receive an additional term of one, two, or three years in the state prison, at the court's discretion.
 "(b) Except in the case of a person punished under Section 422.7 or subdivision (a) of this section, any person who commits a felony that is a hate crime, or attempts to commit a felony that is a hate crime, and who voluntarily acted in concert with another person, either personally or by aiding and abetting another person, shall receive an additional two, three, or four years in the state prison, at the court's discretion.
 "(c) For the purpose of imposing an additional term under subdivision (a) or (b), it shall be a factor in aggravation that the defendant personally used a firearm in the commission of the offense. Nothing in this subdivision shall preclude a court from also imposing a sentence enhancement pursuant to Section 12022.5, 12022.53, or 12022.55, or any other law.
 "(d) A person who is punished pursuant to this section also shall receive an additional term of one year in the state prison for each prior felony conviction on charges brought and tried separately in which it was found by the trier of fact or admitted by the defendant that the crime was a hate crime. This additional term shall only apply where a sentence enhancement is not imposed pursuant to Section 667 or 667.5.
 "(e) Any additional term authorized by this section shall not be imposed unless the allegation is charged in the accusatory pleading and admitted by the defendant or found to be true by the trier of fact.
 "(f) Any additional term imposed pursuant to this section shall be in addition to any other punishment provided by law.
 "(g) Notwithstanding any other provision of law, the court may strike any additional term imposed by this section if the court determines that there are mitigating circumstances and states on the record the reasons for striking the additional punishment."
In 2004, the Legislature reorganized a number of the hate crime statutes. (Stats. 2004, ch. 700.) The change most relevant to our discussion was the adoption of a single definition of "hate crime" for all purposes, except as required by other express provisions of state or federal law. (§ 422.9.) "Hate crime" is now uniformly defined in section 422.55 as follows:
 "(a) `Hate crime' means a criminal act committed, in whole or in part, because of one or more of the following actual or perceived characteristics of the victim: "(1) Disability. "(2) Gender. "(3) Nationality. "(4) Race or ethnicity. "(5) Religion. "(6) Sexual orientation. "(7) Association with a person or group with one or more of these actual or perceived characteristics.
 "(b) `Hate crime' includes, but is not limited to, a violation of Section 422.6." (Italics added.)
The phrase "in whole or in part, because of" finds further clarification in section 422.56, subdivision (d):
 "`In whole or in part because of' means that the bias motivation must be a cause in fact of the offense, whether or not other causes also exist. When multiple concurrent motives exist, the prohibited bias must be a substantial factor in bringing about the particular result. There is no requirement that the bias be a main factor, or that the crime would not have been committed but for the actual or perceived characteristic. This subdivision does not constitute a change in, but is declaratory of, existing law under In re M.S. (1995) 10 Cal.4th 698 and People v. Superior Court (Aishman) (1995) 10 Cal.4th 735." (Italics added.)[3]
Accordingly, the intentional selection of a victim with a protected characteristic is not sufficient to constitute a hate crime; a subjective attitude amounting to "bias motivation" is an essential element of the offense. This requirement is implicit in the legislative purposes served by the hate crime statutes; the Supreme Court has explicitly recognized such a requirement in the statutes; and the Legislature has recently enacted statutory definitions making the requirement an express part of all hate crime laws in the state.
"Bias motivation," however, is not further defined in the hate crime statutes. Does the requirement comprise only the mental attitude of animosity in the sense of hatred or enmity, or does it extend to something more? And if it does extend to something more, how far does it extend? For example, if a man sexually assaults a woman because of anger or contempt arising from his relationship with that particular woman, would he be acting with bias motivation? Or must he also harbor some negative attitude that disposes him generally against women? If a perpetrator targets a disabled person for robbery because that particular disabled person appears to be defenseless, is the perpetrator acting as the result of bias motivation? What if the perpetrator has a stereotyped conception that all disabled people are defenseless? The distinction between discriminatory selection for utilitarian reasons and a selection based upon feelings such as bigotry or group animus is well documented in the academic literature. (See, e.g., Lawrence, Punishing Hate: Bias Crimes Under American Law (1999), pp. 29-39; Wang, Recognizing Opportunistic Bias Crimes (2000) 80 B.U.L. Rev. 1399, 1406-1411; Weisburd Levin, Gender Symposium: "On the Basis of Sex": Recognizing Gender-Based Bias Crimes (1994) 5 Stan. L. Poly Rev. 21, 27, 33-40.)
In order to determine the scope of the "bias motivation" requirement of section 422.56, subdivision (d), we may apply well recognized rules of statutory construction, beginning with the plain language of the statute.[4]
"Motivation" commonly means a motivating force, or subjective reason, for particular behavior. (Webster's 3d New Internat. Dict. (2002) p. 1475.) Here, we are concerned with the kinds of motivations that are culpable for purposes of the hate crime laws, and which are not: that is, what does "bias" mean? A common definition of the word "bias" is "an inclination of temperament or outlook . . . such prepossession with some object or point of view that the mind does not respond impartially to anything related to this object or point of view . . . prejudice." (Id. at p. 211; see also Black's Law Dict. (8th ed. 2004) p. 171, col. 1 [bias is "Inclination; prejudice"].) "Prejudice," in turn, is commonly defined as "an irrational attitude of hostility directed against an individual, a group, a race, or their supposed characteristics . . . an opinion or judgment formed beforehand or without due examination." (Webster's, supra, at p. 1788; see Black's, supra, at p. 1218, col. 1 ["a preconceived judgment formed without a factual basis; a strong bias."] Hence, "bias motivation" connotes some pre-existing negative attitude toward a protected characteristic.[5] While no definitive listing of cognizable motivations is possible, we believe that under proper circumstances a range of attitudes may amount to bias motivation in addition to hatred or animosity, such as resentment, revulsion, contempt, unreasonable fear, paranoia, callousness, thrill-seeking, desire for social dominance, or desire for social bonding with those of one's "own kind." The question is, at bottom, one of proof, and each case must be decided on its own individual circumstances.
1. Sexual Assaults Based On Gender
The first question concerns a sexual assault committed by the perpetrator in part because of the victim's gender, but the perpetrator has no animosity toward the victim or toward persons with the victim's gender. Has a hate crime been committed under California law? We conclude that is has not.
Here, the victim's gender is relevant to the commission of the crime. For instance, a heterosexual male perpetrator who assaults female victims would not consider committing a sexual assault on a male. However, in the limited circumstances presented, the offense would not constitute a hate crime. This is so because a hate crime is not defined as one where the protected characteristic is a cause in fact of the offense; rather it is defined as one where the bias motivation is a cause in fact of the offense. (§ 422.56, subd. (d); In re M.S., supra, 10 Cal.4th at p. 719.) As we have seen, bias motivation connotes more than the intentional selection of a victim who has a protected characteristic; it connotes acting on a preexisting negative attitude toward the protected characteristic itself.
On the other hand, the fact that a perpetrator who assaults only women is a heterosexual male would not necessarily preclude a hate crime charge. For example, a male whose sexual assaults were motivated by his bias against women could be charged with a hate crime. Evidence of his bias motivation could take a number of forms, including an admission of bias; a history of similar attacks with bias established; or the nature and circumstances of the attack, such as using misogynistic epithets or performing sexual mutilation. As an issue of proof, each case must be evaluated on its own facts.
In answer to the first question, we conclude that if a perpetrator commits a sexual assault wholly or partly because of the victim's gender, a hate crime has not been committed unless the perpetrator also acts upon some animosity or other bias motivation toward the victim's gender.
2. Perception of Victim's Vulnerability
The second question concerns a crime where the perpetrator believes that the victim's disability, gender, or other protected characteristic makes the victim more vulnerable to the commission of the crime. Has a hate crime been committed for purposes of California law under these limited facts? We conclude that it has not.
A perception of vulnerability is sometimes grounded in bias, and sometimes not. For example, where a perpetrator loiters around a bank's automated teller machine waiting for a vulnerable target and, after avoiding several muscular young men, robs a disabled person, has a hate crime been committed? Without other evidence establishing bias, the attack could not be proved to be motivated by animosity rather than by mere "pragmatic opportunism." If, however, the perpetrator avoids other vulnerable-appearing targets, such as frail, elderly persons or inebriated persons, such circumstances would be evidence that the perpetrator's motivations included bias against disabled persons. Of course, a perception of vulnerability may itself be evidence of bias, as for example when a group of youths attack a person they perceive as "weak," "worthless," or "fair game" because of a protected characteristic, including gender or disability. (See, e.g., In re M.S., supra, 10 Cal.4th at pp. 707-708.) Each case would present its own issues of proof.
The underlying principle, however, remains the same: a hate crime is defined not as one in which perceived vulnerability is a cause in fact, but one in which bias motivation is a cause in fact. (§ 422.56, subd. (d); In re M.S., supra, 10 Cal.4th at p. 719.) Whether the perpetrator's perception of vulnerability is evidence of a bias motivation must depend on the circumstances of each case.
We conclude in answer to the second question that if a perpetrator commits a crime wholly or partly because the perpetrator perceives that the victim's disability, gender, or other protected characteristic makes the victim more vulnerable to the commission of the crime, a hate crime has not been committed unless the perpetrator also acts upon some animosity or other bias motivation toward the victim's disability, gender, or other protected characteristic.
3. Disabled Person Under Perpetrator's Care
The third question concerns a crime committed against a disabled person who is under the care of the perpetrator, where the perpetrator has no animosity toward the victim or toward disabled persons in general. Has a hate crime been committed? We conclude that it has not.
A disability is a protected characteristic. (§ 422.55, subd. (a)(1).) The fact that a disabled person is under the perpetrator's care may make the disabled person more vulnerable to the commission of an offense by that particular perpetrator, but it is not in itself relevant to the definition of a hate crime.[6] The evidence may establish that the crime was motivated by reasons other than bias, such as greed, neglect, or strong emotions arising from the situation. On the other hand, if there is evidence that a bias against the disability was a "substantial factor" (§ 422.56, subd. (d)) in committing the offense, it is immaterial that other motives may have played a part in the crime. "There is no requirement that the bias be a main factor, or that the crime would not have been committed but for the actual or perceived characteristic." (Ibid.) What is essential is that "discriminatory motivation is an element that must be proved beyond a reasonable doubt" in prosecuting a hate crime. (In re M.S., supra, 10 Cal.4th at p. 718.)
We conclude in answer to the third question that if a perpetrator commits a crime wholly or partly because the victim is under the care of the perpetrator for a disability, a hate crime has not been committed unless the perpetrator also acts upon some animosity or other bias motivation toward the victim's disability.
4. Reporting Hate Crimes to the Department of Justice
The final question concerns the definition of "hate crime" for purposes of the reporting requirements imposed upon local law enforcement agencies under California law. We conclude that the statutory definition contained in section 422.55 furnishes the appropriate definition.
Section 13023 provides:
 "(a) Subject to the availability of adequate funding, the Attorney General shall direct local law enforcement agencies to report to the Department of Justice, in a manner to be prescribed by the Attorney General, any information that may be required relative to hate crimes. This information may include any general orders or formal policies on hate crimes and the hate crime pamphlet required pursuant to Section 422.92.
 "(b) On or before July 1 of each year, the Department of Justice shall submit a report to the Legislature analyzing the results of the information obtained from local law enforcement agencies pursuant to this section.
 "(c) For purposes of this section, `hate crime' has the same meaning as in Section 422.55."
Thus, the specification of section 13023, subdivision (c), provides the answer to the final question.
We conclude that the definition to be applied by a local law enforcement agency in reporting hate crimes to the Department of Justice is the same as the definition of "hate crime" contained in section 422.55, as further clarified by section 422.56, subdivision (d), namely, a criminal offense committed in part because of the perpetrator's bias motivation toward the victim's actual or perceived disability, gender, nationality, race or ethnicity, religion, sexual orientation, or association with a person or group with one or more of these actual or perceived characteristics.
[1] All references hereafter to the Penal Code are by section number only.
[2] In addition to the laws generally addressed herein, other related statutes prohibit or provide enhanced penalties for specific hate-related acts (§§ 190.03; 422.6-422.77; 594.3, 11411-11413), create civil remedies for hate crimes (Civ. Code, §§ 51.7-52.1), permit courts to issue special orders protecting victims of hate crimes and preventing future hate crimes (§§ 422.77-422.93), require the Peace Officers Standards and Training Commission to offer training on hate crimes enforcement (§ 13519.6), and require the Department of Justice to collect information and report annually on the statewide incidence of hate crimes (§§ 13020-13023).
[3] We note that the words "because of" are defined in CALJIC No. 8.28 for juries determining whether to find the special circumstance of killing because of a protected hate crime characteristic. CALJIC No. 8.28 provides in part:
 "`Because of' means the bias motivation must be a cause in fact of the murder, whether or not other causes also exist. A `cause in fact' as used in this allegation means that the bias motivation was a factor that produced as a direct, natural and probable consequence the death of the victim and without which the death of the victim would not have occurred.
 There may have been more than one motive for the killing. When multiple concurrent motives exist, the prohibited bias is a cause [in fact] of the killing if it was a substantial factor in bringing about that result."
[4] In construing a statute, we are to ascertain the intent of the Legislature so as to effectuate the purpose of the law, and the statute's words are generally the most reliable indicator of the Legislature's intent. (People v. Gardeley (1996) 14 Cal.4th 605, 621; People v. Jenkins (1995) 10 Cal.4th 234, 246; Scott v. Continental Ins. Co. (1996) 44 Cal.App.4th 24, 29-30; Adoption of Kelsey S. (1992) 1 Cal.4th 816, 826.) "`Words used in a statute . . . should be given the meaning they bear in ordinary use.'" (Wilcox v. Birtwhistle (1999)21 Cal.4th 973, 977; see In re Dannenberg (2005)34 Cal.4th 1061, 1081.)
[5] In its most recent statistical report on hate crimes, the Department of Justice defines "bias" as "[a] preformed negative opinion or attitude toward a group of persons based on their race, ethnicity, national origin, religion, gender, sexual orientation and/or physical/mental disability." (Cal. Dept. of Justice, Hate Crime in California 2004, p. 53, appen. 5.) This definition is consistent with the definition of "bias" adopted by the United States Department of Justice for purposes of the Hate Crime Statistics Act (28 U.S.C. § 534). (See Fed. Bureau of Investigation, Hate Crime Data Collection Guidelines (1999) p. 2 ["bias" is "a preformed negative opinion or attitude toward a group of persons based on their race, religion, disability, sexual orientation or ethnicity/national origin"].)
[6] Depending on the circumstances, enhancements other than a hate-crime enhancement may be appropriate when a crime is committed against a person who is disabled or otherwise vulnerable. (See, e.g., §§ 667.9, subd. (a) [a person 65 years or older, blind, deaf, developmentally disabled, paraplegic, quadriplegic, or under 14 years], 667.10 [same].)